### E. R. GIRARDEAU v. M. H. PERKINS ET AL.

Decided March 11, 1910.

**1.—Homestead—Absolute Deed—Continued Possession—Notice.**

The fact that a husband and wife continued in possession of the homestead after the execution of an absolute deed thereto, would not be notice to a purchaser from the grantee in the deed of any claim of title to the property on the part of the husband and wife inconsistent with their deed; and so of a creditor of the grantee who takes a deed of trust on the property to secure a loan.

**2.—Same—Deed of Trust—Lien—Taxes.**

A deed of trust by a husband and wife upon the homestead to obtain

money with which to discharge a lien and pay past due taxes on the same, is valid.

### 3.—Same—Improvement—Deed of Trust.

Money loaned to a husband and wife for the avowed purpose of improving the homestead can not be secured by deed of trust on · the same although the money was in fact used for said purpose, unless there be at the time a contract duly executed by the wife for furnishing the materials or doing the work necessary for the improvements.

### 4.—Same—Cases Distinguished.

Pioneer Savings & Loan Co. v. Everheart, 18 Texas Civ. App., 192; Pioneer Savings & Loan Co. v. Paschall, 12 Texas Civ. App., 613; Bayless v. Standard Savings & Loan Co., 39 Texas Civ. App., 353, and Downard v. National Loan & Inv. Co., 22 Texas Civ. App., 570, distinguished.

### 5.—Same—Payments—Application—Valid and Invalid Liens.

Where a note secured by a deed of trust upon a homestead is made up of several items, some of which might legally be secured by such lien and others could not be, payments made on the note by the debtor without direction to which item or items they should be applied, will be applied first to extinguishing the items which constitute a valid lien.

### 6.—Trustee—Payment of Debt—Power to Sell.

A trustee has no power to sell property under a deed of trust after the debt to secure which the deed of trust was given has been paid.

### 7.—Same—Sale after Death of Grantor—Case Limited.

A sale of property by a trustee in a deed of trust within four years after the death of the grantor is void. The doctrine announced in Rogers v. Watson (81 Texas, 403) will not be extended so as to make valid after the lapse of four years a trustee's sale which was made within the four years.

### 8.—Homestead—Deed of Trust—Notice to Purchaser.

A purchaser of real property at a trustee's sale will be charged with notice that the property was occupied by the grantors in the deed of trust as their homestead at the time the deed of trust was executed, and this, though the grantors were dead and the property was not occupied as a homestead at the time of the trustee's sale.

### 9.—Trustee—Power—Revocation by Death.

The death of the grantor in a deed of trust revokes the power of the trustee to sell, and the purchaser at such sale is charged with notice of the fact of the grantor's death when such is the case.

### 10.—Homestead—Deed of Trust—Notice to Purchaser.

The very particularity with which debts, to secure which a deed of trust is given, are described as being such as might be secured by lien on a homestead might be sufficient to charge a purchaser at the trustee's sale with notice that the property was a homestead and to require investigation into the nature of the debts.

ON MOTION FOR REHEARING.

### 11.—Same—Innocent Purchaser.

Intimated that the rights of a purchaser at a sale under a deed of trust who pays value and who has no notice that the debt which the deed of trust was given to secure had been paid at the date of the sale, can not be affected by that fact.

### 12.—Same—Lien Partly Valid.

The sale of a homestead under a deed of trust to pay a debt therein named will confer no title on the purchaser when a considerable part of the debt to

secure which the lien was given, could not be made and was not a valid lien on the homestead.

Appeal from the District Court of Galveston County. Tried below before Hon. Norman G. Kittrell.

*Stewarts, Geo. T. Burgess* and *J. Homer Jones,* for appellant. The deed of trust given by Taylor in favor of Brown, created a valid lien because same was given to secure notes evidencing an indebtedness created for the purpose of making improvements upon the property, which lien for improvements was made and created as by law provided. Lippencott v. York, 86 Texas, 276; Bosley v. Pease, 86 Texas, 292; Pioneer Savings & Loan Co. v. Paschall, 12 Texas Civ. App., 613.

An examination of the case of Robertson v. Paul, 16 Texas, 472, and those under the same doctrine as explained by Judge Gaines, in Rogers v. Watson, 81 Texas, 400, merely shows that sale of property subject to administration, pending administration, is void because of the fact that the creditor must present his claim to the administrator appointed by the probate court. No one at all conversant with the probate or land laws of this State, would for one moment contend that sale could be made under deed of trust, pending administration. In Rogers v. Watson, it was squarely decided that sale made more than four years after the death of mortgagor, no administration having been opened on the estate, would be a valid sale. Now, it is certainly the law in this State, that where there is but one debt and one piece of property it is not necessary to open administration, and the creditor may, if he chooses, bring his suit direct in the District Court, against the heirs, for foreclosure of the lien, securing the ancestor's debt. See Telschow v. House, 10 Texas Civ. App., 671; Patterson v. Allen, 50 Texas, 23; Soloman v. Skinner, 82 Texas, 345; Buchanan v. Thompson, 4 Texas Civ. App., 236; Heard v. McKinney, 1 U. C., 88; Peters v. Hood, 2 White & Wilson, 328.

If the suit can be brought in District Court, and lien foreclosed and property sold by sheriff, why, under similar circumstances, can not a trustee make sale?

As the probate court has no jurisdiction over the homestead property of a decedent, the powers of sale contained in a deed of trust upon the homestead are not affected by the death of the maker of the trust deed. Constitution, art. xvi, section 50.

Homestead vests in heirs with or without administration, and can in no event be converted to use of creditors of estate; Griffie v. Maxey, 58 Texas, 213; Sossaman v. Powell, 21 Texas, 664.

Administrator has nothing to do with homestead: Bassett v. Messner, 30 Texas, 610.

On death homestead vests free from any control of administrators; Hanks v, Crosby, 64 Texas, 484.

Homestead is not assets in hands of administrator, subject to payment of debts; Stephenson v. Marsalis, 11 Texas Civ. App., 168; West v. West, 9 Texas Civ. App., 475.

If the property was homestead at the death of lienor, it formed

no part of estate to be administered by County Court, and the District Court had jurisdiction to foreclose the lien: Telschow v. House, 10 Texas Civ. App., 671; Williard v. Cleveland, 14 Texas Civ. App., 557.

Taylor and wife having conveyed to Perkins, who borrowed money from Wenk, secured by deed of trust executed by Perkins, the fact that Taylor continued to reside on the property, would not charge Wenk with notice of any claim to the property on the part of Taylor, but on the contrary, Taylor having conveyed to Perkins from whom Wenk took mortgage, said Wenk would be an innocent mortgagee, and the lien of the deed of trust would be valid as against Taylor, even though the transaction between Taylor and Perkins was a simulated one; and on foreclosure of such deed of trust purchaser would take title. Love v. Breedlove, 75 Texas, 649; Eylar v. Eylar, 60 Texas, 315; Hurt v. Cooper, 63 Texas, 362; Stephens v. Summerfield, 22 Texas Civ. App., 182.

Taylor having sold to Perkins, and Perkins having executed deed of trust to secure Wenk in the payment of certain notes, and said Perkins having then reconveyed to Taylor in consideration of said Taylor assuming payment of the notes held by Wenk, said notes would operate as a valid vendor's lien in the hands of Wenk, and on foreclosure purchaser would take title. Fontaine v. Nuse, 38 Texas Civ. App., 359; Murphy v. Smith, 50 S. W., 1040; Forbes v. Thomas, 51 S. W., 1097.

The undisputed evidence established defendant E. R. Girardeau to be a purchaser for value and without notice of any rights of defendants. Patty v. Middleton, 82 Texas, 586; Edwards v. Brown, 68 Texas, 329.

*James B. & Charles J. Stubbs,* for appellees.

REESE, ASSOCIATE JUSTICE.—M. H. Perkins and others bring this suit in trespass to try title against E. R. Girardeau to recover lot 14 in northeast block of outlot 140 in the city of Galveston. Arvester Taylor and Lola Louise Taylor, minors, were also made defendants, and answered by attorney *ad litem* joining in the allegations and prayer of plaintiff's petition. They are in effect plaintiffs.

Girardeau answered by general demurrer, general denial, plea of not guilty, and, by way of cross-action, alleged title in himself and that plaintiffs' claim of title was a cloud on his title, which he prayed to have removed.

By supplemental petition plaintiffs alleged that defendant Girardeau's claim of title rested upon a sale under a deed of trust executed by Calvin Taylor and wife to D. P. Brown to secure an alleged indebtedness of $315.61; that said indebtedness had been paid before said attempted sale; that said deed of trust was void, because the property was at the time the homestead of said Calvin Taylor and wife, and because the power to sell under the deed of trust had been revoked by the death of the makers before the sale.

The cause was tried without a jury and the court rendered judg-

ment for plaintiffs and Arvester and Lola Louise Taylor, from which defendant appeals.

From an agreement as to the facts introduced upon the trial and other evidence we find the following facts:

1. Lot 14 in northeast block of outlot 140, city and county of Galveston, Texas, was acquired by Calvin Taylor and wife, Sarah Taylor, who purchased in 1874, and was occupied by them as homestead until November 29, 1897.

2. Calvin Taylor and wife, Sarah Taylor, made and delivered to Allen G. Perkins an instrument properly acknowledged and filed for record December 3, 1897, and duly recorded, on its face appearing to be a general warranty deed, whereby said Taylor and wife conveyed unto Allen G. Perkins said lot 14 in the northeast block of outlot 140, said deed reciting a cash consideration of $1000.

3. On February 14, 1898, Allen G. Perkins and wife conveyed said lot 14 in the northeast block of outlot 140 to Wolfe W. Wenk as trustee, to secure Jacob Wenk in the payment of eighteen notes dated February 14, 1898, for $15 each, and said Jacob Wenk did lend to Allen G. Perkins the sum of $270 in money as evidenced by said notes.

4. Said Jacob Wenk died leaving a last will and testament under which Fannie Wenk duly qualified as independent executrix, and as such independent executrix said Fannie Wenk for a valuable consideration on November 25, 1898, did transfer unto Wolfe W. Wenk the hereinbefore described and mentioned notes.

5. Said Jacob Wenk at the time he loaned said money and took said notes believed that the said real property belonged to and was owned by Allen G. Perkins and had no notice of any fact, if any, to the contrary.

6. Said Wolfe W. Wenk purchased said notes before maturity and believed at that time the hereinbefore described real property was owned by Allen G. Perkins and had no notice of any facts, if any, to the contrary.

7. On February 1, 1899, Allen G. Perkins and wife by general warranty deed conveyed said real property to Sarah Taylor, the deed reciting that same was executed in consideration of $10 paid by Sarah Taylor, wife of Calvin Taylor, and for other good and valuable considerations; one of the considerations for said conveyance being the assumption by said Calvin Taylor and wife, Sarah Taylor, of the said notes held by Wolfe W. Wenk.

8. Calvin Taylor and wife were unable to pay last six of the said notes held by Wenk, aggregating $99.30, and owed $28.44 taxes on said property, and required the sum of $127.26 to make improvements on said property, and they did execute a deed of trust of date June 1, 1899, to John Charles Harris, as trustee, to secure D. P. Brown in the sum of $315.61 evidenced by notes payable monthly; said $315.61 including said amounts owing to Wenk, the sum of $28.44 taxes, and said $127.26 for improvements, and said Taylor and wife did execute, as provided in said deed of trust, and did deliver said notes and deed of trust to said D. P. Brown, and said deed of trust was duly filed and recorded, and thereupon said Brown

did, at the request of said Taylor and wife, pay over to the said Wenk the said sum of $99.30 on said notes so held by said Wolfe W. Wenk, and did pay $28.44 taxes accrued on said real property, and did advance for improvements on said property the sum of $127.26; said deed of trust and lien being executed by said Sarah Taylor and husband, Calvin Taylor, and properly acknowledged before John D. Fearhake, a notary public in and for Galveston County, Texas, and said deed of trust empowering said trustee or any substitute to sell said property.

9. D. P. Brown did pay to Wolfe W. Wenk the said sum of $99.30 and did receive from said Wolfe W. Wenk a transfer of the said notes so owing by said Taylor to said Wenk, and by said transfer said Wenk assigned and conveyed unto said Brown the said notes and all his interest in said real property. John Charles Harris, the trustee named in the before mentioned deed of trust from Taylor and wife, in writing declined to foreclose said deed of trust, and the holder of the notes thereby secured did in writing appoint W. M. Barry as substitute trustee as provided in said deed of trust, and said W. M. Barry, in accordance with the terms and as provided in said deed of trust and in accordance with the laws governing trustee's sales, did sell said real property at public auction to D. P. Brown, and did execute and deliver proper conveyance to said Brown of date May 7, 1902, the sale having been made on the first Tuesday in May, being the 6th day of May, 1902.

10. D. P. Brown in turn executed proper deed of conveyance to Wenman and Morrissey, who, by proper conveyance, conveyed to defendant herein, E. R. Girardeau, the hereinbefore described real property.

11. Calvin Taylor and wife, Sarah Taylor, were residing on said property on September 8, 1900, with their minor son, Arvester Taylor, then aged eighteen.

12. Said Calvin Taylor and wife both perished in the storm of September 8, 1900, leaving surviving them as heirs at law the following children, M. H. Perkins, aged 41 years; Edward Perkins, aged 37 years; William Perkins, aged 31 years, and Arvester Taylor, aged 18 years, at the time of his parents' death on September 8, 1900, and leaving no other children and no descendants of any deceased child or children.

13. Said Arvester Taylor died on or about July 1, 1905, intestate and leaving surviving his wife, Mary Taylor, plaintiff herein, and his two children, viz., Arvester Taylor and Lola Louise Taylor, both minors, defendants herein.

14. Said Calvin Taylor and wife, Sarah Taylor, died intestate. They owned no property other than that in controversy herein. They owed no debts other than the notes held by Brown as hereinbefore recited. No administration was opened upon the estate of either Calvin Taylor or his wife, Sarah Taylor.

15. No administration has ever been opened on the estate of Arvester Taylor, deceased, and no guardianship has been opened on the estates of the minors, Arvester Taylor and Lola Louise Taylor.

16. Calvin Taylor and wife, Sarah Taylor, resided on said prop-

erty as their homestead from the time they purchased it in 1874 until the time of their death, September 8, 1900.

17. The reasonable market value of the property in question is $2250.

Brown testified that Sarah Taylor applied to him for a loan of money to put her house in a habitable condition, for which purpose the money was used. This is not contradicted by any evidence in the record, and therefore we find that the $127 referred to in the deed of trust was used for the purpose stated. Of the fifty-six notes executed by Taylor to Brown eighteen were paid by Taylor and wife in their lifetime, aggregating not less than $115. In addition to this, $85 was paid to Brown out of money granted by the relief committee immediately after the storm, with which to rebuild on the property, aggregating $200 paid on the indebtedness of $315.61. The statement as to the amount of the eighteen notes paid may not be entirely accurate. It is arrived at from the fact that the first due of said notes was for $6.67 and we conclude from this that the others were for gradually decreasing amounts.

A sale of the property was regularly made by a substitute trustee, regularly appointed, on May 7, 1902, for the satisfaction of said indebtedness, at which sale Brown became the purchaser, receiving a deed from the trustee. Brown in turn sold and conveyed to Wenman and Morrissey, who sold and conveyed to Girardeau for $2200 cash. At the time of the sale under the deed of trust the market value of the property was about $100. Pending the suit, in 1908, there was another sale of the property, under the deed of trust executed to Brown, and also a sale under the Wenk deed of trust, at each of which sales Brown became the purchaser. Brown conveyed to Girardeau the title acquired by him under these sales.

No conclusions of fact and law were filed by the trial court, but from the face of the judgment it appears that the trial court found that the debt in so far as it embraced the $99 due on the Wenk deed of trust, had been paid, and that as to the balance of the debt, that is for taxes and for money advanced to make improvements, the property being the homestead, the deed of trust was void.

The following questions are presented by appropriate assignments of error and propositions thereunder and are decisive of the appeal, so it will serve no useful purpose to discuss the several assignments separately.

No question is made that during all of the time from 1897 to their death in 1900, Calvin and Sarah Taylor, with their minor son, Arvester Taylor, lived upon the property as their homestead. At the date of the execution of the deed of trust by Allen Perkins to Wenk the apparent title was in him under general warranty deed. The continued possession of the property by Taylor and wife was not notice to him of any claim of title on their part inconsistent with their deed to Perkins. (Love v. Breedlove, 75 Texas, 652.) So the Wenk deed of trust was not affected by the homestead claim. This being a valid lien on the property, became also, by the subsequent deed from Perkins to Sarah Taylor and the assumption by her of the payment of the Wenk debt as a part of the purchase price, a

valid vendor's lien upon the property. This valid lien on the homestead amounted at the date of the execution of the deed of trust to Brown, to $99, and formed a part of the $255, to secure the payment of which with interest thereon, this deed of trust was executed. So to this extent this deed of trust was a valid lien on the homestead. The $28.44 paid by Brown for taxes due on the property, in pursuance of the request of Taylor and wife and stated to have been so paid after the execution of the trust deed, became, when included in the deed of trust, also a valid lien on the property in favor of Brown. The taxes were a lien on the property, and when Brown paid them, at the request of Taylor and wife, and after the amount had been embraced in the deed of trust, this gave him a valid lien on the homestead to that extent.

As to the $127 of the indebtedness which was for money lent Taylor and wife to improve the property, and which was afterwards in fact used for that purpose, we think that the same was not a valid lien on the homestead, but that to that extent the deed of trust was, as found by the trial court, void. The decisions on this question are somewhat confusing, but we are of the opinion that they support the conclusion that under the provisions of section 50, article XVI, of the Constitution, a valid lien can not be created upon a homestead to secure money borrowed for the purpose of paying for improvements on the property, even when it is made to appear that it was actually used for that purpose, if there be no contract for furnishing the materials or doing the work. (Gaylord v. Loughbridge, 50 Texas, 573; Campbell v. McCampbell, 34 S. W., 970; Building & Loan Assn. v. Logan, 33 S. W., 1089; Ellerman v. Wurz (Coms. of App.), 14 S. W., 333.)

The Court of Civil Appeals of the Fifth District in Pioneer Savings & Loan Co. v. Everheart, 18 Texas Civ. App., 192 (44 S. W., 885), in a well reasoned opinion, reached a contrary conclusion; but in that case there was in fact a contract in writing to erect the improvements, although it appeared that it was understood that the loan company was not to erect the improvements, but to advance the money to Everheart with which to pay for the same, which was in fact done. The facts in Pioneer S. & L. Co. v. Paschal, 12 Texas Civ. App., 613 (34 S. W., 1001); Bayless v. Standard S. & Loan Co., 39 Texas Civ. App., 353, and Downard v. National Loan Co., 22 Texas Civ. App., 570 (55 S. W., 981), are of similar import. It is provided by the Constitution (sec. 50, art. XVI), that the homestead shall be protected from forced sale for debt except for the purchase money, the taxes due thereon," or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing with the consent of the wife," etc.; and further, "No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor or improvements made thereon as hereinbefore provided."

It can not by any process of reasoning be said that the debt here referred to was for work or materials used in constructing improvements on the property, and much less can it be said that such work

and materials were contracted for in writing, as provided by the Constitution. It may, in many cases, be better that the owner borrow the money so as to be able to pay cash for work and materials, as reasoned in the Everheart case, but that purpose seems not to have been embraced among those for which the homestead can be encumbered. Our conclusion is that in so far as the deed of trust executed by Taylor to Brown attempted to create a lien for the $127 borrowed for making improvements on the homestead, it was void. This left a valid lien for the $99, which was in fact purchase money, and the $28.44 taxes paid by Brown.

There does not appear to have been any application made by either Taylor or Brown of payments made, as aforesaid, aggregating about $200. The $99 due to Wenk and the $28.44 taxes paid were lumped in with the other, and the whole embraced in one note. In such case the payments made should be applied to the discharge of that part of the indebtedness which was a valid lien on the homestead (Paschall v. Pioneer Loan Co., 19 Texas Civ. App., 102 (47 S. W., 98), and by this application such part of the indebtedness was all fully paid before the first sale of the property under the deed of trust, and there was left in the trustee no power to sell. Such sale for that reason conveyed no title, and of course it follows that the subsequent sales conveyed none.

It is contended that appellant ought to be protected on the ground that he had no notice at the time of his purchase, of the fact that the property was the homestead of Taylor and wife when the deed of trust was executed, or of their death. In so far as the sale made in 1902 is concerned, that sale was made after the death of Taylor and his wife and within four years thereafter. Their death suspended the power of the trustee to sell. (Robertson v. Paul, 16 Texas, 472; McLane v. Paschal, 47 Texas, 365; Black v. Rockmore, 50 Texas, 94; Abney v. Pope, 52 Texas, 288.)

It was held in Rogers v. Watson (81 Texas, 403), that this power of sale was only suspended on account of the effect of our laws with regard to the administration of estates by the Probate Court, and that after the lapse of four years, after which no administration could be commenced, none having been opened on the estate, the power to sell could be exercised by the trustee. It is contended by appellant, with much force, that inasmuch as no administration has ever been taken out on the estates of Calvin and Sarah Taylor up to the date of the trial, eight years after their death, and no debt exists except the one to Brown, and they had no property except this homestead, the reason of the rule announced in the Rogers case applied, and the trustee was authorized to sell. If this be true, then a sale, void at the time it is made, becomes valid if administration is not taken out on the estate within four years. We do not feel inclined to extend the rule in the Rogers case so far. At any rate, if appellant's contention on this point be sustained, inasmuch as the only part of the debt which was a valid lien on the homestead had been paid, and thus the power to sell effectively divested, the only benefit to appellant would arise from the fact that at the time of his purchase in 1907 he paid full value and had no notice of the death

of Calvin Taylor and wife or of plaintiffs' claim, and presumably had no knowledge that the property was the homestead of Taylor and wife when the deed of trust was given. These are not facts of which, we think, he can be allowed to plead ignorance. Taylor and wife had lived on the property as their homestead from 1874 to their death in 1900. Any purchaser under the deed of trust given by them, even after their death and the destruction of the homestead, must take notice not only of their death, but of the homestead character of the property at the time the deed of trust was given, regardless of any want of actual knowledge of the facts. Further, it seems to us that there was enough on the very face of the deed of trust, in the particularity with which only such debts as could be supposed to support a lien on the homestead—purchase money, taxes, and cash for improvements—are embraced, to put a prudent person upon inquiry. It seems clear that inquiry pursued with the least diligence would have brought full knowledge of the facts. So we conclude that the plea of innocent purchaser must fail. The second sale under the two deeds of trust was made pending the suit, and, of course, as to the title thus obtained by appellant, the plea of innocent purchaser can not prevail.

This disposes, we think, of all the questions presented by the assignments of error and the several propositions thereunder, which are severally overruled.

We find no grounds for reversal of the judgment and it is affirmed.

### ON MOTION FOR REHEARING.

Appellant in his motion for rehearing presents very forcibly the proposition that being a purchaser for value without notice that the debt of Brown, for which the sale under the deed of trust was made, was paid at the time of such sale, he should be protected as such innocent purchaser, citing Merchant v. Woods, 27 Minn., 396; Palmer v. Bates, 22 Minn., 532, and 2 Ballard on Real Property, secs. 460-1, p. 519.

We are inclined to agree with appellant upon the general proposition that the right of a purchaser at a sale under a deed of trust, who pays value and who has no notice that the debt which the deed of trust is given to secure was paid at the date of such sale, can not be affected by that fact. The application of that rule to the facts of this case, however, can not help the appellant for two reasons. First, even if the debt had been entirely unpaid the sale by the trustee in 1902 was within four years after the death of the maker of the deed of trust, and the second sale, made in 1908, was made during the pendency of this suit. But if we are mistaken in our conclusions from these facts, it appears that the sale was made for the satisfaction of the entire debt; that the property was the homestead at the date of the execution of the deed of trust, and that only a part of the debt secured was or could be made a valid lien on the homestead. We have held that the only part of the debt which was a valid lien on the homestead had been paid; but even if no

part of this debt had been paid, we are of the opinion that a sale of the property for the entire debt, a considerable part of which was not a valid lien, conferred no title on the purchaser. It has been held that a sale of the homestead for taxes due on the homestead, together with taxes due on other property, is void. (Wright v. Straub, 64 Texas, 64.) This principle applies, by analogy, to a sale of the homestead under a deed of trust for an indebtedness part only of which is a valid lien under the Constitution. The motion for rehearing is overruled.

*Affirmed.*

Writ of error refused.