## WELSH v. POTTORFF.
### No. 3268.

Court of Civil Appeals of Texas. El Paso.
Oct. 24, 1935.

W. O. Hamilton, of El Paso, for plaintiff in error.

Jones, Hardie, Grambling & Howell, and Philip Tocker, all of El Paso, for defendant in error.

PELPHREY, Chief Justice.

On February 27, 1930, plaintiff in error purchased the Ashley Apartments, in El Paso, Tex., and as part of the purchase

price executed several notes payable one every six months to Mr. Ashley.

At such time she was the owner of and was conducting the Hilton Beauty Shoppe and the Lenox Hotel, having a checking account in the First National Bank of El Paso in the name of Bessie Welsh. On February 8, 1931, she married E. G. Brown, but continued to conduct her businesses under the same name.

On August 27, 1931, she borrowed from the First National Bank the sum of $1,400, and gave the bank three notes, viz.: One for $200, due September 26, 1931; one for $300, due October 26, 1931; and one for $900, due November 25, 1931. On that date two items were credited to the Bessie Welsh account in the bank; one for $1,376.67, and one for $115. On the day the deposits were made plaintiff in error issued a check for $1,470 to Mr. Ashley. Plaintiff in error had been divorced from Brown before the suit was filed. The first two notes were paid and the present suit is by the receiver to collect the $900 note.

In defendant in error's petition it was alleged that the proceeds of the loan were used by plaintiff in error in the management, control, and disposition of, and for the benefit of, her separate estate.

Plaintiff in error pleaded coverture, demurrer, generally and specially, and pleaded a general denial.

The cause was tried to the court and judgment rendered that the receiver recover $900 principal and $208.75 interest. Plaintiff in error duly moved for a new trial, and, upon such motion being overruled, brought the case to this court by writ of error.

## Opinion.

Plaintiff in error's brief contains two assignments of error and three propositions, all raising the question of the right of defendant in error to recover from plaintiff in error by reason of her married status at the time the note was executed.

Prior to 1840 the rights and obligations flowing from the relation of man and wife in Texas depended entirely on the principles of the Spanish law. Smith v. Smith, 1 Tex. 621, 46 Am. Dec. 121.

The Fourth Congress of the Republic in that year adopted the common law of England as the rule of decision in Texas, and in connection with such adoption enacted certain exceptions as to the separate property of the wife, making her property at the time of her marriage, the increase of any slaves owned by her at such time, and the property acquired by her during the coverture by gift, devise, or descent, her separate property, but giving the sole management thereof to the husband. This was a recognition of the separate and distinct legal existence of the wife and a continuation, with certain modifications, of the Spanish law rule.

In the Texas Constitutions (article 7, § 19) of 1845, 1861, 1866, and (article 16, § 15) of 1876, the property owned and claimed by the wife before marriage, and that afterward acquired by gift, devise, and descent, was declared to be her separate property, and it was further provided that laws should be passed to more clearly define and to protect her separate property and that held in common with her husband.

Numerous statutes as to the right of the wife in and to her separate property, and the management thereof, were passed by succeeding Legislatures until today we find our statutes to read:

"All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife. The wife shall have the sole management, control and disposition of her separate property, both real and personal; provided however, the joinder of the husband in the manner now provided by law for conveyances of the separate real estate of the wife shall be necessary to the incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this law." Rev. St. art. 4614, as amended by Acts 1929, c. 32, § 1 (Vernon's Ann. Civ. St. art. 4614).

Article 4623, R. S.: "Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property, shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children."

In 1913 the provision now to be found in article 4614, R. S., as amended, placing the wife's separate property under her sole management, control, and disposition, was adopted; this being the first time that such a provision ever had been enacted in Texas.

■ The question of the right of a wife to contract with reference to her separate property was soon thereafter raised, and the Supreme Court in the case of Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S. W. 694, held that the act conferring upon married women the exclusive management and control of their separate property necessarily invested them with the power to contract with reference to it.

This implied power has been held to include the making of any contract reasonably proper and necessary in the exercise of her power of management, control, and disposition. 23 Tex. Jur. § 171, pp. 204, 205, and cases cited. That the wife may purchase property upon credit with the bona fide intention to pay therefor from her own funds, and thereby become its separate owner, is now well settled. Attebery v. Stringer (Tex. Civ. App.) 3 S. W.(2d) 935 (writ dismissed); Baxter v. Baxter (Tex. Civ. App.) 225 S. W. 204; Blum v. Light, 81 Tex. 414, 16 S. W. 1090.

This court has heretofore held that a married woman could be held on her contract to repay borrowed money where the note sued upon represented money used for the benefit of her separate estate. Sommer v. Kramer et ux. (Tex. Civ. App.) 67 S.W.(2d) 1078.

■ Is there sufficient evidence in the record to support a finding by the court that the proceeds of the note sued upon were used in the management and for the benefit of the separate property of the plaintiff in error? We think so. The record shows that plaintiff in error purchased the Ashley Apartments while she was a feme sole; that one of the notes on the apartments fell due the date the note here sued upon was executed; and the $1,470 check to Ashley was given on that date. Plaintiff in error admits that the check was given either in payment of the notes or for interest on them; that she was in default in the payment of the purchase-money notes on the apartments and was being sued at the time she paid the $1,470. These facts certainly are sufficient to show that the proceeds of the note here sued upon were used for and in the protection and for the benefit of what is indisputably her separate property.

The judgment of the trial court, in this state of the record, must be affirmed.

Justice HIGGINS was disqualified, and did not sit in this case.