**FEST et al. v. WILLIAMS et ux.**
No. 9633.

Court of Civil Appeals of Texas. San Antonio.

Nov. 6, 1935.

On Rehearing Jan. 2, 1936.

Pfeiffer & Sanders, of San Antonio, for appellants.

C. L. Bell, of San Antonio, and Alvin P. Mueller, of Seguin, for appellees.

SMITH, Chief Justice.

This action involves the validity of a sale, under deed of trust, of a house and lot in the city of San Antonio, alleged to have been the homestead of the owners, W. B. Williams and wife, at the time the deed of trust lien was created to secure their note for borrowed money. The action, brought by the Williamses, was one in trespass to try title, and to cancel Williams' note and the deed of trust given to secure it. The Williamses recovered as prayed for, and Henry Fest, the present holder, by transfer, of the note and mortgage, has appealed.

Appellants' defense rests, generally, upon the contentions that at the time the deed of trust was executed by the Williamses they were the owners of two residences, the one in suit being situated in San Antonio and the other in Seguin; that both were suitable for, and were alternately occupied by, the Williamses as their homestead; that Williams came to John P. Pfeiffer, acting for a mortgage company, to borrow $600, and, representing and designating the Seguin place as his homestead, and the San Antonio place as not then his homestead, secured the loan, and he and his wife executed the deed of trust fixing a lien upon the San Antonio property as security for his note then and there given for the borrowed money; wherefore Williams was bound by such representation and designation, and is now estopped to claim the homestead exemption upon that property.

It seems undisputed that the deed of trust contained no designation of a homestead; that the blanks for such designation, embraced in the printed form of the instrument, were not filled out, nor were there any stipulations in the instrument relating to the homestead matter. There was testimony that in 1921 the Williamses, in borrowing money from a stranger to this transaction, formally, in writing, designated the Seguin property as their homestead; that this written designation was, either by design or inadvertence, delivered along with other title papers to Pfeiffer by Williams, at the time the latter obtained the loan from the former; that again, in 1926, the Williamses, in another transaction, unrelated to this, formally designated the Seguin place as their homestead, but there is no contention that the Williamses presented this instrument to Pfeiffer or used it in procuring the loan from him.

The cause was submitted upon special issues, in their answers to which the jury found, as stated in appellees' brief, "that Williams and his wife occupied the San Antonio property as their homestead at the time the mortgage was given; that such occupancy was open, visible and apparent, and that the Seguin property was not used by them as their homestead at that time. That Williams did not represent to Pfeiffer that the Seguin property was his homestead, but did state as alleged by appellants, that the San Antonio property was not his home. The jury found further that Pfeiffer at the time the loan was made, and Fest at the time he bought the note, possessed knowledge of sufficient facts at said respective dates, which would, under the same or similar circumstances have put a person of ordinary prudence on inquiry as to the extent of appellant's use and occupancy of the premises at 219 Canton Street, San Antonio, and if such inquiry had been pursued with reasonable diligence each would have discovered that said property was so used, occupied and enjoyed as the home of appellees, at the time the loan was made, but that such inquiry was not pursued." While it is difficult for this court to fathom or follow the processes by which the jury arrived at some of those findings, there was, nevertheless, some material evidence to support them, and therefore we are obliged to up-

hold them and adopt them as the findings of this court, and from them determine the law of the case.

▆▆ In view of the facts established by the jury findings, appellant must rest his defense of estoppel upon appellees' written designation, made in 1921, of the Seguin place as their homestead, and upon the jury finding that, at the time he procured the loan, in 1929, Williams represented to the lender that the San Antonio place was not his homestead. We are of the opinion that the 1921 designation cannot, in this case, establish estoppel as a matter of law. It could not be given that effect, in any event, in the absence of a jury finding that Williams presented that designation to the lender in order to influence him in making the loan; that was a disputed issue of fact, and, if appellant desired the issue to be resolved in his favor, he should have elicited a jury finding thereon, failing which he waived the right to assert the legal effect of the omitted finding. The result is that the incident of the written designation, and its effect upon the plea of estoppel, was evidentiary only, to be considered by the jury in arriving at their finding upon the issue of whether Williams represented, at the time of the loan, that the Seguin place was his homestead. The jury resolved that issue against appellant. It is obvious, and the jury no doubt concluded, that the written designation, made in a different transaction eight years before, and not presented as a present representation to the lender by the borrower, at the time of this loan, was entitled to but little, if any, probative effect upon the issue of misrepresentation. To taint the transaction with fraud, so as to effect an estoppel, the misrepresentation must have been made at the time of the transaction, for the purpose of procuring the benefit sought.

▆▆ In urging estoppel, appellant also relies upon the jury finding that at the time he procured the loan Williams represented to the lender that the San Antonio place was not his homestead. But the jury further found that the San Antonio place was in fact Williams' homestead at that time, that the Williamses were at that time actually, openly, visibly, and apparently occupying and using the place as the family homestead, and that the lender, and its assign, appellant Fest, had knowledge of such facts as would put a person of ordinary prudence upon inquiry of such use and occupancy, which inquiry, if pursued with reasonable diligence, would have disclosed the true facts, but that the lender and appellant failed to use such diligence. These findings bring the case within the well-established rule that estoppel, in homestead cases, is not available to a person asserting that defense upon the owner's statement that the mortgaged property is not his homestead, where the property was in fact the homestead at the time, and where it appears that inquiry upon the mortgagee's part would have disclosed the homestead character of the property. 22 Tex.Jur. p. 180 et seq., §§ 124, 125, 126, and authorities cited. Upon the foregoing findings and conclusions we overrule appellants' propositions 1 and 2.

▆▆ Appellant claims that he was an innocent purchaser of the notes given by appellees for the borrowed money and of the lien thereon. The rule is that the doctrine of innocent purchaser is not available to the purchaser of notes and lien given upon a homestead actually occupied by the mortgagor at the time the notes and lien are executed, as was the case here. 22 Tex.Jur.• p. 175, § 122, and authorities cited.

▆▆ Moreover, aside from that rule, the assignee of such notes and lien may not enforce them, if it appears that he knew, or had such notice as would put him upon inquiry, which, if pursued, would have disclosed to him that the property was a homestead. 22 Tex.Jur. p. 173, § 121, and authorities cited. The finding of the jury upon that issue brought this case within that rule. These questions are raised in appellants' fourth, fifth, sixth, seventh, and eighth propositions, which are overruled. We also overrule appellants' propositions 9 and 11, as being without merit.

▆▆ In their thirteenth proposition appellants complain of the charge of the court upon the burden of proof, upon the ground that the charge "advises the jurors of the effect their answers will have on the judgment to be rendered, and informs them how such questions should be answered in order for the plaintiffs or defendants to recover." Appellees point out, and the record shows, that these objections were not urged by appellants until after the cause was tried, the jury charged, and the verdict returned. That being the case,

those objections cannot be considered by this court. We overrule the thirteenth proposition.

The much-hackneyed question of jury misconduct is sought to be presented in this appeal, through appellants' twelfth proposition. The proposition itself does not disclose the transaction complained of, and we find this statement only under that proposition:

"Statement:

"On May 18, 1934, the jury, after having deliberated on the charge of the court since the afternoon of May 17, 1934, came into open court and stated:

" 'We have reached a verdict, etc.' (here see remainder of page 45 of Tr., also page 46 and first four lines of page 47 of Tr.).

"Said jury was by the court requested to retire and put their questions in writing (Tr. 47).

"The Jury retired, put their question in writing, and submitted it to the court (Tr. 42).

"Whereupon the court gave the jury the following supplemental charge (Tr. 43 and 44):

"To which action of the jury and the court, defendants excepted and moved the court to dismiss the jury and declare a mistrial (Tr. 45, 46, 47, 48).

"The court overruled such exception and denied said motion (Tr. 52).

"The defendant assigned such action of the court as error in its Amended Motion for New Trial (Tr. 85, paragraph 9).

"The court overruled defendants' Amended Motion for New Trial (Tr. 91)."

That statement is, as a matter of course, insufficient to present any matter for consideration on appeal. The business of an appellate court is such as to give the court no warrant to search the record, eke out and segregate the appropriate facts, and apply them to the points of law propounded by the parties. We therefore decline to consider appellants' twelfth proposition, as not being presented or supported in a manner entitling it to consideration. We might add the observation that from the arguments of the parties it appears that, whatever the alleged misconduct was, it related entirely to two specific issues, and, as both of those issues were answered favorably to appellants, they are estopped to complain that the jury were guilty of misconduct in arriving at that solution.

The judgment is affirmed.

On Motion for Rehearing.

In the original disposition this court held that the trial court did not err in excluding from evidence tax receipts offered by appellants to show payment, by the mortgagee, of certain taxes upon the property involved. What was said upon that question will be withdrawn from the original opinion, and the matter will now be discussed anew.

Under the provision of the Constitution which prohibits the forced sale of a family homestead, an exception is made in the case of taxes due thereon, for which the taxing power has a lien upon the property. Article 16, § 50.

A person who pays taxes due upon a homestead, at the request of the owner, is subrogated by law to the tax lien to the amount of the taxes paid by him. Specifically, the mortgagee in this case having paid certain state, county, and school district taxes upon the Williams homestead, at the request of the owners, and those items having been included in the amount secured by the deed of trust, the mortgagee thereby obtained a valid lien upon the homestead to the amount of the taxes paid, and the trustee's sale under the power given in the deed of trust was authorized and valid. Belcher Land Mortgage Co. v. Taylor (Tex.Com.App.) 212 S.W. 647; Harrison v. Bank (Tex. Com.App.) 238 S.W. 209; Chambers & Co. v. Little (Tex.Civ.App.) 21 S.W.(2d) 17; Girardeaux v. Perkins, 59 Tex.Civ.App. 552, 126 S.W. 633; Wood v. Eastland B. & L. Ass'n (Tex.Civ.App.) 75 S.W.(2d) 466; Price v. McAnelly (Tex.Civ.App.) 287 S.W. 77; Meador v. Wagner (Tex. Civ.App.) 70 S.W.(2d) 794; Williams v. Daniel (Tex.Civ.App.) 30 S.W.(2d) 711.

It appears in this case that, when the Williamses defaulted in certain payments upon the debt secured by the deed of trust, the trustee proceeded, under powers given him in that instrument, to sell the property, which was bought in by appellants. Appellees made no objection to that sale, but, after it was consummated and the property was conveyed, by trustee's deed, to the purchaser, appellees brought this suit in the form of trespass to try title, and to cancel the deed of trust and trus-

tee's deed. By this procedure appellees assumed the burden of establishing, as they have charged, that the entire rights and interests claimed by appellants under and by virtue of the trustee's deed were derived from a void deed of trust lien upon appellees' homestead. Appellees did not meet this burden below, for it was shown by parol testimony and by tax receipts offered in evidence by appellants, but excluded by the court, that the mortgagee, at appellees' request, paid certain state, county, and district taxes upon the property involved, and that the amounts so paid were included in the amount secured by the deed of trust, in which it was expressly provided that the lien thereby created included the tax items. Under the authorities cited, the deed of trust, to the extent of those items, was valid, as were also the foreclosure, sale, and trustee's deed thereunder.

██ The fact that the total debt secured by the lien, and for which the sale was made, was substantially in excess of the amount of the taxes paid, does not impair or affect the validity of the sale, for the power of sale was properly exercised if any part of the debt was owing at the time. Price v. McAnelly, supra; Wood v. Eastland B. & L. Ass'n, supra; Chambers v. Little, supra; Welsh v. Pottorff (Tex. Civ.App.) 87 S.W.(2d) 287.

██ There is this qualification of the rule that, where the mortgagor, prior to the trustee's sale, has made payments upon the debt, such payments should be credited upon that part of the debt covered by a valid lien, such as, for taxes paid, and, if such payments exceed or aggregate the amount of taxes paid, the sale is nevertheless void, if not valid for any other reason. Girardeaux v. Perkins, supra; Paschall v. Loan Co., 19 Tex.Civ.App. 102, 47 S.W. 98. The record indicates that some payments were made on the debt secured by the deed of trust in question, but the showing upon that issue is not sufficient to warrant an order of affirmance, or rendition, in this court.

██ Appellees insist that appellant did not himself put the deed of trust and trustee's deed in evidence, and that, while appellees did put those instruments in evidence, they offered them, not as muniments of title, but only for the purpose of cancelling them. We are of the opinion that,

as appellees had the burden of showing that those instruments were void, and exhibited them to court and jury for the purpose of establishing their invalidity, neither that court nor this may close its eyes to the contents of those papers, and blindly declare them to be without any effect. We are of the opinion that appellants' third proposition is well taken, that the court erred in excluding from evidence the tax receipts purporting to show that the mortgagee paid taxes upon the property involved; the evidence was admissible in connection with appellants' testimony that the mortgagee paid said taxes, at appellees' request, and included those items in the amount of the debt secured by the deed of trust.

Appellants' motion for rehearing will be granted, and the judgment reversed and the cause remanded.