### F. M. Mundine v. J. E. Pauls.

#### Decided January 22, 1902.

**1.—Jury—Excusing Witness From.**

It was proper to excuse from the jury, before they were sworn, one required as a witness in the case, and supply his place from talesmen, though he had been already selected as a juryman and the complaining party had exhausted his challenges.

**2.—Evidence.**

In a controversy between a purchaser of premises at foreclosure sale, claiming certain ginning machinery, placed thereon after the lien attached, as fixtures passing with the land, and one claiming them by bill of sale as personalty, and not fixtures, it was error to the prejudice of the former to prove that the value of the property had been enhanced, beyond that of the naked lots when this lien originated, by the erection of buildings, etc., though the machinery was held not to have passed by the foreclosure sale.

**3.—Assignment of Error—Propositions.**

An assignment of error involving several questions will not be considered unless each issue is presented under an appropriate proposition in the brief.

**4.—Charge—Written Instrument.**

It was proper for the court, in his charge, to describe a written transfer of personal property as a bill of sale, in the absence of evidence giving it any other character, such as that of a mortgage.

**5.—Fixtures—Question of Fact—Notice.**

Whether ginning machinery was so attached as to become part of the realty was a question of fact for the jury, and a purchaser of the realty claiming it as a part thereof was taxed with the knowledge of the facts which would put a man of ordinary prudence on inquiry.

**6.—Fixtures—Ginning Machinery.**

Ginning machinery so placed on mortgaged premises as to be capable of removal without injury to the property and not intended to be made a part thereof would not become subject to the mortgage, and might be mortgaged, or transferred as personalty by bill of sale, without removal from the premises, and held by such vendee as against a purchaser of the realty under mortgage foreclosure.

Appeal from the County Court of Lee. Tried below before Hon. I. H. Bowers.

*Rector & Watson,* for appellant.

*J. L. Rousseau* and *Eason & Eason,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought by appellee, Pauls, against appellant Mundine, to recover one 70-saw Chatham gin stand, feeder and condenser, worth $50; one 50-saw Colbert gin stand, feeder, and condenser, worth $50; one grist mill worth $50; one Skinner & Wood plain engine, valued at $70; and one 50-horse power Atlas boiler, with attachments, valued at $150; and if the property could not be had, then for its value. The petition alleged that the property was in the ginhouse formerly owned by Nathan Green, in Lexington, Lee County, Texas, and that the property was on January 1, 1901, unlawfully taken and converted by Mundine.

Defendant set up that W. W. Mundine, the owner, on the 1st of January, 1897, conveyed lots 3, 4, 13, and 14 in block 17 of the town of Lexington to Green, taking promissory notes of Green for part of the purchase price, retaining express vendor's lien, to secure payment for the lots, expressed in the deed and notes; that F. M. Mundine, at the October term of the District Court of Lee County, obtained judgment against Green on the notes which he had obtained from W. W. Mundine, and foreclosure of the lien, and that F. M. Mundine purchased the premises at forclosure sale the first Tuesday in January, 1901, under order of sale on the judgment, and the sheriff executed to him a deed therefor. It is alleged by Mundine that the properties sued for were fixtures on the premises purchased by him, placed on the same by Green after his purchase of the premises, long before the institution of the suit on the vendor's lien promissory notes. The answer shows how the property was attached to the realty so as to become a part of the same. Defendant further set up that if plaintiff held any "bill of

sale" by Green to him of the property in suit it was executed *after* the articles were attached to the land and became a part of the same without Mundine's consent and did not affect his right to the same.

Plaintiff replied that he held a mortgage on the engine and boiler mentioned in his petition and the gin stand, the mortgage bearing date April 9, 1897, which was duly registered in Lee County, and filed by the county clerk of Lee County on the 24th of April, 1897; and Nathan Green, who had executed the mortgage, executed to plaintiff a bill of sale of all the property described in the petition, and that on the day of sale under order of the court, the 1st day of January, 1901, and before sale, he gave notice that the machinery sued for was his property, and that Mundine purchased the same with notice of his, plaintiff's, right to the same.

The trial by jury resulted in verdict and judgment for plaintiff for the property sued for, and in case it could not be returned, for its value, found to be $375; from which this appeal is taken by Mundine.

*Opinion.*—1. After both parties had announced ready for trial, lists of the jurors for the week were drawn and furnished the attorneys for the parties, who struck from the lists peremptorily, leaving others, among whom was a juror, Ruthven, legally chosen; other jurors were ordered summoned and the sheriff was sworn and directed to summon other jurors to fill the panel. The plaintiff's counsel informed the court that he wished to use the accepted juror Ruthven as a witness for plaintiff, though not summoned as a witness, and moved that he be excused from the jury. Defendant objected; the court overruled the objection and retired the juror, defendant excepting. Defendant had exhausted all his challenges and had to accept talesmen. No objection is urged against the jurors last accepted and none was made to the court. No injury is shown as a result of the action of the court, and defendant has no ground of complaint. Wolf v. Perryman, 82 Texas, 112. Ruthven was used as a witness for plaintiff as to exchange of boilers with Nath Green, Green to give some boot and make a mortgage for the difference. This boiler exchanged to Green is now in litigation in this suit, it having been placed on the lots sold to Green by Mundine (W. W.). The court was not in error in excluding the witness from the jury before it was sworn to try the case, and as soon as he was informed that he was a witness in the case. Any witness in a case is disqualified for serving as a juror on its trial. Rev. Stats., art. 3141. When the court is informed of the disqualification before the jury is sworn to try the case and other unobjectionable jurors can be had and are accepted, no injury is shown and consequently no error.

2. On the trial the court permitted plaintiff's witness Green to testify, over objections of defendant, that the premises (the lots sold by W. W. Mundine to him, Green, on which a vendor's lien was retained to secure the purchase money notes), including the ginhouse, engine

room and mill, would be of greater value than were the naked lots when Green purchased them; and would be worth more after the machinery pleaced thereon by Green had been removed. The objection of defendant to the question and answer was, that if the machinery had been so attached to the realty as to become a permanent accession to the freehold, it was immaterial, irrelevant, and incompetent to show the present value of the same without the machinery; thereupon the attorney for plaintiff, in the presence of the jury, stated to the court that it was his purpose to show by the witness that Mundine, the defendant, would not be injured, because he would still have the property greater in value than the debt owed by Green for the purchase money. The court permitted the witness to testify that the premises, including the gin-house, engine room and well (improvements made by Green after his purchase from Mundine) would be of greater value than were the naked lots when he purchased them, even after removing therefrom all the machinery sued for by plaintiff. Defendant excepted to the ruling of the court. The ruling is assigned as error, and we believe it was erroneous. It was prejudicial to defendant's rights under his purchase of the realty for the jury to be informed that the realty left after removing the machinery would still be worth more than the naked lots, on which defendant had a vendor's lien which was foreclosed upon, and defendant purchased the property as improved. There was no such issue in the case, and hence the testimony was irrelevant. It may and probably did influence the jury in finding for plaintiff on questions submitted to them concerning the rights of the parties, and in concludin that, if their verdict should be in favor of plaintiff, defendant would not be injured in his original rights acquired by his vendor lien notes. Whether the machinery sold by Green to pay Pauls was or was not, at the time of the mortgage to Pauls and the transfer to him, attached so as to become a part of the reality, was the main question in the case to be passed on by the jury; and it was improper to allow proof irrelevant to the issues before the jury, which was calculated to influence them to the prejudice of defendant. The jury might have found that some of the machinery was attached to and became realty, and might have been correct in their conclusion, but failed to so find, because of the testimony objected to. The testimony was irrelevant and inadmissible, and it was error to admit it.

3. The third assignment ought not to be considered, inasmuch as it contains more than one question and is not followed by propositions on each issue relied on.

4. The same is true of the fifth assignment of error.

5. The court did not err in styling the instrument executed by Green to Pauls a bill of sale. It is in form of a bill of sale, and it is immaterial what it was called by witness on former trial, if he did in fact express himself on the subject. Facts in proof may determine that an instrument in form of a conveyance is and was intended to be a

mortgage, but there are no such facts in proof. Hence it was not error for the court to call the instrument a bill of sale in the charge. It was his duty to so charge.

6. The sixth assignment of error is also at variance with the rule that an assignment relied on as a proposition, to entitle it to consideration by the court, must not contain more than one question.

7. It is assigned as error that the court erred in failing to charge the jury that if Green did execute to plaintiff a bill of sale to the machinery sued for, but that if neither W. W. nor F. M. Mundine knew of the existence of the bill of sale, and the machinery was undetached from the soil, and if defendant procured a judgment against Green on his vendor lien notes, with foreclosure of the lien on the premises on which the machinery was placed, that under such circumstances, notice to F. M. Mundine only a few minutes before the sale of the premises would not affect his rights to acquire title to the premises including the machinery in controversy, which Green had affixed as a permanent accession to the freehold; and in this connection the court erred in refusing plaintiff's special charge number 2, which properly embodied the issues.

There is a proposition under this assignment to the effect that under the facts showing that Nathan Green bought the lots on which the machinery was afterwards placed, executing vendor lien notes, subsequently owned by appellant, and the evidence also showing that the machinery in suit had been attached to the realty so as to make it a part thereof, Green could not sell the machinery as chattels by bill of sale to a creditor to the injury of the security held by appellant, by virtue of his vendor lien notes, and "any attempted sale of the machinery without severance from the freehold and delivery to the creditor would be ineffectual to pass title to the machinery as chattels, in the absence of knowledge thereof and consent thereto by appellant."

Neither the assignment nor the proposition should assume that the machinery was so affixed to the realty as to become a part thereof; that question was for the jury under proper instructions by the court. Actual notice at the time of the sale to him at public vendue is not the only criterion; implied notice is also a question to be considered, and if Mundine had knowledge of facts that would put a man of ordinary prudence upon inquiry as to the truth, he would be charged with notice of such full knowledge of the facts so attainable.

8. The true rule as to chattels or realty in this case is, if the machinery could be removed without injury to the realty, it was not realty and did not pass by the sale to Mundine, who purchased only the lots under the foreclosure of the vendor lien notes executed by Green to W. W. Mundine. F. M. Mundine, by the transfer to him of the notes retaining vendor's lien, acquired thereby no title to the lots, there being no conveyance of the equitable title left in W. W. Mundine after his sale which retained such lien in the notes, and the deed of conveyance to Green. F. M. Mundine did not occupy the position of the orig-

inal vendor without such conveyance. He only had a lien on the lots, and lien rights only are in issue as to him, and these are limited in appellant's brief to time arising from his purchase at the foreclosure sale. We believe the opinion in the case of Willis v. Munger Manufacturing Company, 36 Southwestern Reporter, 1010, lays down the correct doctrine as to the question of machinery on land, there being a lien on the land. It is said in the Munger case: "The vendees had the right to place the machinery on the lot without forfeiting the right of its removal, so long as it could be done without injury to the property; as they possessed that right, they could incumber it with a mortgage to another with such right of removal to satisfy the mortgage." A sale to satisfy the mortgage debt would confer the same right upon the purchaser. In placing chattels upon realty, the intention at the time as to whether or not they were to become immovable fixtures ought to be considered with other facts bearing on the issue. We believe the court's charge on this subject was correct.

The foregoing is sufficient to indicate our opinion on the questions in the case. It is not necessary to say more. We conclude the judgment of the lower court should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*