## SOUTHWESTERN PUBLIC SERVICE CO.
### v. SMITH et al.
### No. 3291.

Court of Civil Appeals of Texas. Amarillo.
Oct. 23, 1929.

Rehearing Denied Nov. 20, 1929.

Turner, Culton & Gibson, of Amarillo, for appellant.

Works & Bassett, of Amarillo, for appellees.

JACKSON, J.

This suit was instituted in the district court of Potter county, Texas, by the plaintiff, the Southwestern Public Service Company, a corporation, against the defendants, the Chicago Trust Company, National Bank of Commerce, Illinois Standard Mortgage Company, and the Metropolitan Casualty Insurance Company of New York, corporations, and H. E. Smith.

Plaintiff alleges:

That on the 13th day of October, 1926, the defendant H. E. Smith executed to plaintiff

a written order wherein he applied to purchase from plaintiff certain personal property consisting of refrigerators known as frigidaires, with compressors and attachments and equipment thereto belonging, which is fully described in plaintiff's petition. That the defendant Smith agreed to pay for said property the sum of $14,475; $500 on the execution of the order, $850 when the conduits were installed, 10 per cent. on the arrival of the equipment, and the balance when the frigidaire system was completely installed and accepted. That the property purchased was to be installed in an apartment house owned by the defendant Smith. That said order, among other things, provides: "That said Seller does not relinquish his title to said equipment, and that the title shall not pass to the undersigned Purchaser until the purchase price, whether represented by account, trade acceptance, note, other instrument, or judgment, and all extensions and renewals for same, is paid in full, and that until such payment such equipment shall be and remain the property of said Seller. That this order is subject to acceptance by said Seller, and when so accepted constitutes a binding contract which covers all agreements, expressed or implied, between the undersigned Purchaser and said Seller. That this equipment shall remain chattel property."

That the order was accepted by plaintiff and the equipment installed thereunder and accepted by the defendant Smith, by reason of which Smith became indebted to plaintiff in the amount evidenced by said order.

That the defendant Smith failed to make payment in compliance with the order, and on October 12, 1927, executed to plaintiff one note for $3,575, and one note for $10,000, the first due 90 days after date and the other due April 12, 1928, and at the same time executed a chattel mortgage on certain parts of said property and equipment fully described in said mortgage. That the mortgage recites that the property was purchased by the defendant Smith from plaintiff and located in said apartment building.

That the defendant Smith has paid on said indebtedness an aggregate of $2,800, but, though often requested, has failed and refused and still fails and refuses to pay the balance of said notes or any part thereof. That said notes have been placed in the hands of attorneys for collection, and suit is brought to enforce the payment of the balance on said notes and to foreclose plaintiff's lien.

That each of the corporate defendants is asserting some character of lien or claim against the property sold by the plaintiff to the defendant Smith, but such claims or liens are inferior to the lien of plaintiff, and should be canceled and held for naught or subordinated to plaintiff's lien for the payment of the purchase money for said property.

Plaintiff prays for judgment against H. E. Smith for its debt, interest, and attorney's fees, and a foreclosure of its lien on the property described, against all of the defendants, and that all liens or claims of the corporate defendants be canceled and held for naught, or subordinated to plaintiff's lien.

The defendants answered by general demurrer and general denial, but no special defense was made by the defendant Smith.

The corporate defendants alleged:

That they each have an interest in the property involved, and especially the property described in plaintiff's petition. That said interests are superior to the rights of plaintiff and the lien asserted by it and sought to be foreclosed. That the frigidaire equipment furnished by plaintiff to defendant Smith was purchased to be installed in and to become a part of the Talmadge Place Apartments, located on lot 4 and the north 40 feet of lot 3, in block 195 of the Plemons addition to Amarillo, Potter county, Tex. That said apartment building was in process of construction at the time the frigidaire equipment was contracted for and installed therein, and plaintiff understood that said frigidaire property was purchased for said purpose, and agreed that said property should be installed in said apartments as a part of the permanent improvements and betterment thereof.

That about December 31, 1926, defendant Smith and his wife, for the purpose of improving said property, made, executed, and delivered their mortgage and deed of trust to the defendant Chicago Trust Company, as trustee, and the National Bank of Commerce, as cotrustee, to secure the payment of an issue of $225,000 6 per cent. graduated first mortgage serial bonds, which instrument was duly recorded on February 1, 1927, in the deed of trust records of Potter county, Tex. That based upon and in conformity with said deed of trust, Smith and his wife issued $225,000 of bonds dated the 31st day of December, 1926, in denominations of $500 and $1,000, to mature serially the aggregate principal amounts on January 1st of each year from January 1, 1930, to January 1, 1939, which bonds are described in defendant's answer and bear interest from January 1, 1927, and are payable in Chicago, Ill.

That said deed of trust included and fixed a valid lien upon the property described as follows:

"Parcel A. Lot four and the north forty feet of lot three in block 195 of the Plemons Addition to Amarillo, Potter County, Texas, together with all and singular the tenements, hereditaments and appurtenances thereunder belonging, or in anywise appertaining, and all the estate, rights, title and interest, claim and demand whatsoever of the mortgagors, either

at law or in equity, or in possession or expectancy of, in or to the same.

"Parcel B. All buildings and improvements hereafter situate upon the premises described in Parcel A aforesaid, and all machinery, engines, boilers, elevators, lighting, heating, ventilating and power plants, apparatus and equipment, and all other fixtures and all renewals or replacements thereof, hereafter situate upon the premises described in said parcel A, except to the extent that any such equipment and fixtures may be placed in such building by tenants or licenses with right of removal, and the rents, issues and profits, which shall accrue from said premises, which rents, issues and profits are hereby conveyed and assigned to the Trustee and its successors and assigns in said trust.

"Parcel C. All and singular the personal property of every kind, nature and description hereafter placed in any building or buildings hereafter situated on the premises described in Parcel A aforesaid and used or to be used in connection with the operation thereof and all renewals thereof and additions thereto and without in any way limiting the foregoing, including all furniture, carpets, window shades, drapery and fittings and equipment, except to the extent that any such equipment and fixtures may be placed in such building by tenants or licenses with right of removal."

That the improvement of said property contemplated and included the erection upon the lots of a six-story apartment building of about fifty-two apartments, with garages and other outbuildings, and also the furnishing and equipping of said apartment building, including the installation in the various apartments thereof of frigidaires, all of which was known and understood and agreed to by the plaintiff when the frigidaire equipment was sold to the defendant Smith. That the improvements were completed about August 15, 1927.

That the frigidaire equipment contracted for included the constructing into the walls and floors of metal conduits with openings, surrounded by metal casing, in the wall of each apartment, through which openings metal pipes connected the frigidaire cabinets through said conduits, pipes, and connections to the machinery and compressors located on the basement floor. That the conduits, pipes, and openings were permanently and securely built into the walls and floors and so arranged as to be permanent and for continued use in the maintenance and operation of the frigidaire system and not removable without injury to said building. That such frigidaire system was necessary for the permanent and continued use and occupancy of the apartments and for the production of rents and revenues, and became permanent fixtures, not removable without injury to the building, and covered by the mortgage of the corporate defendants. That such equipment was placed in said building without knowledge or notice to the corporate defendants of any lien or claim of the plaintiff and that the purchasers and holders of the bonds secured by the deed of trust were purchasers, without notice, for value and in due course of trade. That the Chicago Trust Company and the National Bank of Commerce of Amarillo are trustee and cotrustee, respectively, in the mortgage given for and in behalf of the purchasers and holders of the bonds issued by reason thereof, and answer herein for the bondholders. That none of said bonds have been redeemed, but all are outstanding for value and were purchased in good faith and without notice or knowledge to the purchasers or the corporate defendants of any adverse lien or claim to said property held by plaintiff.

That, at the time plaintiff took the chattel mortgage described in its petition, it had notice of the mortgage and deed of trust lien and the outstanding bond issue thereon and secured thereby and that said chattel mortgage was taken and received by the plaintiff subject to all the rights of the corporate defendants and the bondholders.

The defendants attach a copy of the mortgage or deed of trust, upon which they rely, to their answer, and make it a part of their pleadings.

The plaintiff, by supplemental petition, in reply to defendants' answer, again set up the portion of the original order providing that the equipment sold by it to defendant Smith should remain chattel property, and further alleged: That it is not seeking to foreclose a lien upon any of the conduits and other connections which were installed in the walls or floors as a permanent part of the building. That the frigidaire cabinets are joined to the pipes by a nut which can be unscrewed, the pipe taken apart and out of the conduit, and the frigidaire cabinets removed without in any manner injuring the building. That the compressors are set on the concrete floor of the basement without any bolts or other attachments fastening them to the floor, and can be removed without injury to the building, and that all the property on which the plaintiff seeks to foreclose its lien can be removed without any injury to the building or any part thereof. That the order given by defendant Smith to the plaintiff for the frigidaire equipment was given long before any mortgage was given to the defendants, and, in compliance with said order and the provisions thereof, plaintiff acquired and retained a chattel mortgage lien on all of said frigidaire equipment which remained personal property subject to said chattel mortgage, and that the mortgage dated October, 1927, was given by Smith to plaintiff to cover and include the same property sold by plaintiff to Smith upon the original chattel, and was a continuance

of the mortgage originally given, and kept said chattel mortgage in full force and effect, superior to any lien or claim of the corporate defendants.

The defendants, by supplemental answer, pleaded general demurrer, general denial, and specially denied that the frigidaire equipment could be disconnected and removed without material injury to the apartment building; that the finishing of each and all of the apartments is high class and expensive and to attempt to disconnect and remove the portion of the frigidaire equipment now sought by plaintiff to be foreclosed upon would cause great damage to said building; that the entire frigidaire equipment was purchased and included in one and the same order; and that any acts or statements by the defendant Smith asserting that said equipment or any part thereof was or should remain chattels were of no force and effect in view of the acts and conduct of the plaintiff and said defendant Smith in their dealings and the improving of said property.

In answer to special issues submitted by the court, the jury found, in effect, that it is impracticable to remove the frigidaire cabinets and the compressors in question without injury to the building, and that, prior to the execution of the chattel mortgage by H. E. Smith to the plaintiff in October, 1927, notice was given by Smith to plaintiff that there was in existence a deed of trust lien on the property described in the chattel mortgage.

On these findings the court rendered judgment that the plaintiff recover of the defendant Smith the sum of $13,954, with interest and attorney's fees thereon, and that, it appearing to the court from the findings of the jury and the undisputed facts that said debt is secured by a valid chattel mortgage lien upon the property upon which plaintiff seeks a foreclosure, the plaintiff have a foreclosure of its said chattel mortgage lien on said property, as a subsequent and inferior lien and subject to the prior lien of the corporate defendants securing the bonds executed and issued by the defendant H. E. Smith and his wife.

The public service company prosecutes this appeal and assigns as error the action of the trial court in holding, under the facts revealed by the record, that the deed of trust lien urged by the corporate defendants is superior to the lien of appellants, because the evidence shows that said deed of trust was taken before the frigidaire equipment was placed in the building, and hence the deed of trust only covered such after-acquired equipment on the condition and to the extent that Smith acquired title thereto.

The record discloses that on October 13, 1926, the defendant Smith, by his written application, ordered from appellant the frigidaire equipment to be installed in his apart-ment building; that it was to be paid for as alleged in appellant's petition; that the property was sold as chattels, and title thereto reserved by the seller until the price therefor was fully paid; that the appellant installed the equipment in the building; that Smith defaulted in the payment, and on October 12, 1927, he executed a chattel mortgage lien on the frigidaire cabinets, compressors, and water cooler to secure the payment of the notes sued on; that the written order reserving title in appellant was never recorded, but the chattel mortgage given in October, 1927, was duly recorded in the chattel mortgage records of Potter county, on November 14, 1927, but not in compliance with article 5498, R. C. S.; that the deed of trust given against the premises as security for the bonds issued by Smith and wife to develop and improve the premises was dated December 31, 1926, and acknowledged by Smith and wife February 1, 1927, by the trustee January 26, 1927, and by the cotrustee January 31, 1927, and filed for record February 1, 1927, in the deed of trust records of Potter county, Tex.

The record does not disclose when the erection of the apartment building was begun, but tends to show that the conduits for the installation of the frigidaire system were put into the walls somewhere about February 1, 1927; that in the latter part of May the work was done "roughing in" the frigidaire system, and was finished some time probably the latter part of July or early in August; that the building was accepted by Smith somewhere about the middle of August.

The record does not disclose whether any of the corporate defendants at or before the execution of the indenture or deed of trust given to secure the bondholders saw any plans or specifications for the apartment building or knew or was advised that when completed it would have installed therein a frigidaire system. It does not disclose that the frigidaire system or its value was taken into consideration as a part of the security for the bonds issued, nor does it disclose that the foreclosure of appellant's lien upon and the removal from the building of the cabinets and compressors of the frigidaire system would leave the bondholders without ample security out of which to enforce the payment of the bonds.

"Where articles are sold on the condition that the title shall not pass until they are paid for * * * their annexation to the realty of the purchaser does not render them a part of the realty and irremovable, but an agreement reserving the right of removal in favor of the vendor is implied." 26 C. J. 679, § 42.

"If one agree to sell to another personal property and deliver it, retaining the title until the purchase money be paid, and the vendee obtain his consent, and move it upon and attach it to the vendee's realty, it will, in

our opinion, remain personalty as between the parties to that transaction. So, if the mortgagor in possession, by agreement with the mortgagee, annex a mortgaged chattel to his own land, the mortgagee's rights are not affected, and he may still treat it as his personal property." Harkey v. Cain, 69 Tex. 146, 6 S. W. 637.

This principle is announced again in San Antonio Brewing Ass'n v. Arctic Ice-Machine Mfg. Co. et al., 81 Tex. 99, 16 S. W. 797, in which case it is also held that the failure of the mortgagee to register his mortgage would not render it void as between the parties to it.

■ The order given by Smith for the frigidaire property clearly reserved the title in appellant until the purchase money was paid. It is therefore manifest that, as between defendant Smith and appellant, the contract reserving title in appellant until payment was made for the property was valid and enforceable.

"The question as to the effect of such an agreement as against third persons arises frequently, although not exclusively, in cases in which articles have been sold to the owner of land under a condition that the title shall remain in the vendor or with a purchase money mortgage to the vendor for the price of the articles, and the rights of such vendor or mortgagee as against a subsequent purchaser or mortgagee of the land, or as against a prior mortgagee of the land, has been the subject of frequent discussion. The question will here be considered as regards the effect of such an agreement, first, as against one receiving a conveyance or mortgage of the land after the annexation of the articles; secondly, as against one claiming under a mortgage made prior to such annexation." 26 C. J. 681, § 45.

After stating the principles controlling the rights of a third person holding a mortgage given after the annexation of the articles, the same authority, page 684, § 49, says: "An agreement that an article or structure attached to the realty shall be removable or shall remain personalty whether expressed or merely implied from the making of a chattel mortgage thereon, the conditional character of a sale thereof, or its annexation under license, is ordinarily given full effect as against a mortgage of the realty made previous to the annexation, in so far as this will not interfere with the security of such mortgage, the mortgagee not having been misled and having advanced nothing on the faith of such annexation."

In Willis v. Munger Improved Cotton Machine Manufacturing Co., 13 Tex. Civ. App. 677, 36 S. W. 1010, 1012, in which a writ of error was denied, the court says: "The second assignment of error insists that as appellants held a vendor's lien upon the realty at the time the machinery was placed upon it, and

the machinery was so placed without their knowledge or consent, and without any agreement on their part that it should remain chattel until paid for, as to them it became a part of the realty. The vendor's lien notes held by Willis & Bro. were made and executed by Hildebrandt & Bohne December 13, 1892, and on the same day transferred to said Willis & Bro. The machinery in question was bought from the Munger Machine Company by Hildebrandt & Bohne March 30, 1893, when the mortgage in question was executed, and the machinery was, about one month thereafter, placed upon the real estate upon which said lien existed. Willis & Bro. were fully apprised of Munger's claim to the property at the time they brought their suit to foreclose their vendor's lien, and long prior to the time of sale thereunder. The property to which the vendor's lien attached would not be injured by the removal of the machinery. The contention is that notwithstanding the machinery should be treated as personalty, as between the Munger Company and Hildebrandt & Bohne, as to appellants it should be regarded as a part of the realty. We do not think this contention is based upon any sound principle. By sustaining and applying it in this case, the Munger Company would lose the security taken for their machinery, and appellants would have the value of the machinery added to the realty upon which their vendor's lien rested, without valuable consideration paid, or any damage to be done to their security by the removal of the machinery. The vendees had the right to place the machinery upon the lot without forfeiting the right of its removal, so long as it could be done without injury to the realty."

This language was quoted with approval in Murray Co. v. Simmons, 229 S. W. 461, by the Commission of Appeals, and the opinion by the Commission approved by the Supreme Court.

"Where the sole controversy is as to the priority of liens created on real estate by mortgages, the law which protects the bona fide purchaser of negotiable paper before due from latent defenses or equities, has no application in determining the priority from the mere fact that such paper is secured by one of the mortgages." 41 C. J. 510.

The undisputed testimony shows that the compressors, cabinets, and water cooler of the frigidaire system upon which appellant maintains that its lien is superior to the deed of trust lien securing the bonds issued were placed in the building after the deed of trust lien was given, and Smith never paid therefor and never acquired title thereto. The testimony does not show that at the time the deed of trust was executed, nor at the time advancements of moneys were made to the defendant Smith, the corporate defendants knew or were advised that a frigidaire sys-

tem would be installed in and constitute a part of the completed building. It does not show that the removal from the building of the cabinets and compressors sold by appellant to Smith would reduce the value of the property so as to materially impair the security of the bondholders.

■ Under the facts presented, the rights of the corporate defendants and the bondholders are controlled by the principles governing the holders of liens on real estate given before the chattels are annexed thereto. They are prior, not subsequent mortgagees or lienors for value, and could not avail themselves of the failure of appellant to register its conditional sales contract, and, unless the chattels were so attached to the building as to become a part of the realty, they would not have a lien superior to that urged by appellant. Murray Co. v. Simmons, supra; New Orleans & O. Ry. Co. v. Mellen, 12 Wall. 362, 20 L. Ed. 434; Cox v. New Bern Lighting & Fuel Co., 151 N. C. 62, 65 S. E. 648, 134 Am. St. Rep. 966, 18 Ann. Cas. 936; Campbell v. Roddy, 44 N. J. Eq. 244, 14 A. 279, 6 Am. St. Rep. 889; Beatrice Creamery Co. v. Sylvester, 65 Colo. 569, 179 P. 154, 13 A. L. R. 441; 1 Jones on Mortgages, 714.

The appellant challenges the sufficiency of the testimony to support the finding of the jury that it is impracticable to remove the cabinets and compressors from the building without injury thereto, and assigns as error the action of the trial court in holding that for that reason the deed of trust lien given to secure the bondholders is superior to its lien securing the purchase price of the chattels.

The testimony relative to the annexation of and removal from the building of the compressors and cabinets shows: That the building is constructed of concrete, reinforced with steel, six stories high, with a basement, and has fifty-two apartments. That metal pipes, one to two inches in diameter, called conduits, are placed in the floors and walls. That these conduits open into the basement about twelve inches from the floor and into the apartments about eighteen inches from the floor. That at said openings the conduits are flared and the openings inclosed by what is called a conduit box 9x12 inches. That the copper tubes which carry the chemicals of the frigidaire system are run through these conduits and connect the compressors in the basement with the frigidaire cabinets in the different apartments. That the compressors are set on a cardboard put on the concrete floor of the basement, but are not connected to the floor, but are attached to the copper tubes that extend through the conduits to the frigidaire cabinets and also connected with pipes carrying water to and from the compressors, but that there is a separate cut-off with each machine, and the water connections to each can be cut off to prevent water run-

ning into the basement. That the frigidaire cabinets have openings in them corresponding in height from the floor with the openings of the conduit boxes in the apartments. That the cabinets are set on the floor immediately in front of the conduit boxes and connected with the copper tubes which carry the chemicals. That, in order to remove the compressors, it would be necessary to unscrew the nuts which connect them with the copper tubes and also remove some nuts or unions which connect the compressors with the water pipes through which water passes into and out of the compressors. That the frigidaire cabinets are connected to the copper tubes which run to and from the compressors, and, in order to remove the cabinets, it would be necessary to disconnect them from the copper tubes. That the disconnection of the compressors from the copper tubes and the water pipes and the disconnection of the cabinets from the copper tubes could be made with an ordinary wrench or a pair of ordinary pliers. That the compressors and cabinets could be disconnected without injury to them and taken out through the doors of the building. That the removal of the frigidaire cabinets would leave the openings made by the conduit boxes exposed, and these boxes are either flush with the wall or extend a very little into the room, and no lids have been furnished for closing them. That, after taking out the compressors and cabinets, the conduits could be used by several other refrigeration systems for installation purposes. That appellant is only seeking to recover and remove the compressors and cabinets, and is not asking for the removal of the conduits from the walls and floors.

■ In determining whether or not a chattel has become an immovable fixture, three tests are given:

"1st. Has there been a real or constructive annexation of the article in question to the realty?

"2d. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

"3d. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold?—this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made.

"And of these three tests, pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention." Hutchins v. Masterson, 46 Tex. 551, 554, 26 Am. Rep. 286.

■ Inasmuch as the conditional sales contract executed by the defendant Smith and

appellant for the purchase and sale of the refrigeration equipment provided that title should not pass to Smith and the property should remain chattels until the purchase price therefor was fully paid, the intention of the parties manifestly was that the property should remain chattels, and, notwithstanding Smith testified on the trial of this case that it was installed as a permanent arrangement for use in connection with the building, this does not contravene the original intention of the parties that, until paid for, the title should not pass from appellant and the property should remain chattels. Murray Co. v. Simmons (Tex. Com. App.) 229 S. W. 461.

In Willis et al. v. Munger Improved Cotton Machine Manufacturing Co. et al., 13 Tex. Civ. App. 677, 36 S. W. 1010, 1012, it was contended that the machinery had been annexed to the freehold as a benefit to it and had become an accessory necessary to the enjoyment thereof, and partook so much of the realty that its ownership passed with the title of the land and was not subject to removal except by consent. In passing upon this contention, the court said: "Where it is clearly shown, as in this case, that the intention was that the property should remain chattel, and there has been no such attachment of the chattel to the realty as would injure the realty by the removal of the chattel, the chattel should not be regarded as a part of the realty"—citing numerous authorities.

■ The intention of the parties evidenced by an agreement will preserve the character of chattels as personal property when otherwise they would become fixtures, and, while defendant Smith no doubt intended that the frigidaire system should ultimately become a part of his building and be permanently affixed thereto, this intention must be held subordinate to the intention evidenced by the agreement to the effect that annexing the property should not change its character from chattels to realty until the price therefor was paid.

■■ In view of the holdings of our courts relative to the effect to be given to the intention of the parties in determining whether a chattel has become a fixture, in our opinion the testimony in this case is not sufficient to show that the compressors and cabinets were so affixed and attached to the building as to become a part of the realty and subject to the lien given to secure the bondholders, nor is it sufficient to warrant the findings of the jury that the compressors and cabinets could not be removed without materially injuring the building. In addition to the authorities cited supra, we call attention to David v. Roe et al. (Tex. Civ. App.) 271 S. W. 196; Shelton v. Piner (Tex. Civ. App.) 126 S. W. 65; and Mundine v. Pauls, 28 Tex. Civ. App. 46, 66 S. W. 254.

We deem it unnecessary to pass on the assignments not disposed of in the foregoing discussion, as the errors urged will probably not arise on another trial.

The judgment is reversed, and the cause remanded.