## LUBBOCK NAT. BANK v. NICKELS et al.

### No. 3977.

Court of Civil Appeals of Texas. Amarillo.

Oct. 11, 1933.

Rob't. A. Sowder and Vickers & Campbell, all of Lubbock, for appellant.

Bledsoe, Crenshaw & Dupree, of Lubbock, and A. J. Folley, of Floydada, for appellees.

HALL, Chief Justice.

The appellant bank filed this suit against Nickels and wife and Wilson & Sons, alleged to be a corporation. The facts upon which the action is based are, in substance, that on and prior to July 30, 1931, Nickels owned a five-acre tract of land in Floyd county upon which was located a gin, office building, scales, water tank and tower, and a frame dwelling house. That on said date Nickels and wife executed a deed of trust conveying four and three-fourths acres out of said tract for the purpose of securing four promissory notes aggregating $3,000. On the day the deed of trust was executed, Nickels and wife also executed and delivered a chattel mortgage on certain gin machinery described therein. After alleging these facts, plaintiff further alleged that the parties to such instruments agreed that C. E. Maedgen, president of the appellant bank, as contractor, should have a mechanic's lien upon the property, which was afterwards delivered. That Wilson & Sons had a deed of trust on one-fourth of an acre of said five-acre tract. That the notes contained the usual acceleration clause, and, because of the maturity of $1,-500 which Nickels was not able to pay, the bank exercised its option and declared all the notes due, placing them in the hands of its attorneys for collection.

Nickels and wife answered that the five

acres of land upon which plaintiff bank claimed to have its lien was and had been their homestead since 1925. They admitted the purchase of the gin machinery for $2,-500, and that they further agreed to repay $500 advanced to them with which to erect the gin plant. They alleged that all of said instruments were void in so far as they attempted to be enforced against their homestead. That the gin machinery had become attached to and was a part of the realty and was therefore not subject to the chattel mortgage lien.

Wilson & Sons alleged that it had a mortgage on one-fourth of an acre out of the northwest corner of the five-acre tract, and that Nickels owed it approximately $500.

Wilson & Sons recovered a judgment against Nickels personally, but was denied a foreclosure of its lien, and did not prosecute an appeal.

The bank by supplemental petition alleged that Nickels and wife, at and prior to the execution of the chattel mortgage, deed of trust, and mechanic's liens asserted by it, represented prior to and on July 30, 1931, that the property in controversy was not their homestead; that the homestead of the family at said time and prior thereto was in the village of Dougherty, located about seven miles from the five-acre block in controversy; that the deed of trust contained this recital: "The property [referring to the five acres] is not our homestead; our homestead being in Dougherty, Floyd County."

It is further alleged that the instruments creating the several liens were executed and delivered by Nickels and wife before any money or machinery for which the notes and security were given were furnished. That the plaintiff believed the representations made by defendants to be true, and acted thereon, and would not have advanced the money and machinery had it known or believed that defendants claimed the property as their homestead. That by reason of defendants' representations and the stipulation in the deed of trust to the effect that the five acres was not their homestead, plaintiff was induced to furnish and did furnish the machinery and advanced the money represented by the notes sued on. Wherefore Nickels and wife were estopped to set up their homestead claim.

Nickels and wife filed a supplemental answer denying that plaintiff was not informed of the homestead character of the property prior to such transaction, and expressly alleged that C. E. Maedgen, the bank's president and chief managing officer, knew at the time the deed of trust was executed that said five acres constituted the business and residence homestead of the defendants and had been for a number of years prior thereto. That the recitation in the deed of trust to the effect that the property was not their homestead, but that their homestead was in Dougherty, was inserted in said instrument without their knowledge or consent. They denied that the property in Dougherty was their homestead.

The notes were offered in evidence by plaintiff, who also offered the chattel mortgage executed by Nickels and wife on July 30, 1931, conveying the gin machinery involved in this action, said mortgage containing this recital: "This mortgage is intended and does convey the machinery, buildings and equipment pertaining to or constituting any part of the gin plant located on five acres," etc. The deed of trust dated July 30, 1931, executed and duly acknowledged by Nickels and wife on July 30th and 31st, respectively, and which had been filed for record August 4th thereafter, was also introduced. In addition to the disclaimer and designation of homestead above set out, the deed of trust contained this recital: "This deed of trust is given to secure notes for the purchase of certain gin machinery described in the chattel mortgage of even date herewith and to secure the payment for money advanced to erect a gin plant on the above described land." Plaintiff also introduced what purports to be a materialman's lien, dated August 14, 1931, signed and acknowledged by Nickels and wife, purporting to contract with C. E. Maedgen for erecting a gin plant on said five acres for a consideration of $3,-000. Mrs. Nickels executed and acknowledged it on August 14th and Nickels on August 19th. This instrument was transferred to the bank.

The case was submitted to the jury upon special issues, as follows:

"1. Do you find by a preponderance of the evidence that on July 30, 1931, the gin site in question was the residence homestead of the defendant Nickels?

"2. Do you find by a preponderance of the evidence that on the 30th day of July, 1931, the gin site in question was the business homestead of the defendant Nickels?

"3. Do you find by a preponderance of the evidence that on July 30, 1931, C. E. Maedgin knew the gin site property in question was the residence homestead of the defendant Nickels?

"4. Do you find by a preponderance of the evidence that on the 30th day of July, 1931, C. E. Maedgin knew the gin site property in question was the business homestead of the defendant Nickels?

"5. Do you find by a preponderance of the evidence that on the 19th day of August, 1931, any of the gin machinery in question had been physically attached to the gin house on the gin site in question?

"6. Do you find by a preponderance of the

evidence that any of the gin machinery in question was placed on the gin site in question before August 19, 1931?

"Special Issue No. 1. Requested by Defendants: Do you find by a preponderance of the evidence that the gin machinery in question was at any time physically attached to the gin house on the gin site in question?"

These issues were all answered in the affirmative, and judgment was entered in favor of the bank against Nickels and wife for the amount of the notes sued upon, including interest and attorneys' fees, but denying the bank's prayer for a foreclosure of its deed of trust, chattel mortgage, and mechanic's liens upon the ground that the five acres constituted the homestead of the defendants.

By its first assignment the bank insists that, although the property was the homestead of Nickels and wife on July 30, 1931, it was subject to the deed of trust lien which they both executed and acknowledged in the manner required by law, because it provided that it was given to secure the purchase price of certain gin machinery and money advanced to erect a gin plant on the land in question.

In the case of Girardeau v. Perkins, 59 Tex. Civ. App. 552, 126 S. W. 633 (writ of error refused), Reese, Justice, held that, under the provisions of article 16, § 50, of the Constitution, a valid lien could not be created upon a homestead to secure money borrowed for the purpose of paying for improvements on the property, even when it is made to appear that it was actually used for that purpose, if there was no contract for furnishing the materials or doing the work. That was a case in which a deed of trust was executed. To the same effect is the holding in Walker v. Woody, 40 Tex. Civ. App. 346, 89 S. W. 789, in which it appears that a deed of trust conveying the homestead had been executed but no mechanic's and materialman's lien contract had been executed by the husband and wife for the erection of the improvements and duly acknowledged as required by law.

According to these authorities, the court did not err in refusing to foreclose the deed of trust lien upon the real estate. The chattels are not described in this instrument. This disposes of the third assignment also.

By its second assignment the bank insists that the chattel mortgage executed July 30th to secure the purchase money for the gin machinery which constituted an improvement on the property operated as a reservation of title to the machinery described in the mortgage, and the court erred in refusing to so hold.

We sustain this assignment. It was the duty of the court to construe the chattel mortgage and declare its legal effect. It contains this stipulation: "It is expressly agreed and stipulated between the parties that in case de-

fault be made by said mortgagor in the payment of the indebtedness above described when the same becomes due or is declared due and payable according to the terms thereof, then the said Bank shall have the right, through its agents, to take immediate possession of all of said property and to either sell the same at private sale without notice to said mortgagor, or sell the same at public sale in the manner prescribed by law or the said Bank may, if it elects, enforce its lien by suit in the court of proper jurisdiction."

In the case of Texas Power & Light Co. v. Malone (Tex. Civ. App.) 42 S.W.(2d) 845, 848, it was shown that a mortgage had been taken upon certain machinery which thereafter became attached to the realty. That mortgage contained this provision: "Said mortgagee or its assigns, agents or representatives are hereby authorized at their option to declare all said note due and take actual possession of said property and to sell the same at public auction for cash at the courthouse door in Hale County, Texas, with or without having possession of said property present at said sale after having given notice of the time, place and terms of said sale as the law now requires for sales of property under execution."

In discussing the effect of the stipulation, this court said: "As stated, this mortgage was executed by Malone about a month before the property was unloaded and moved to the premises where he placed it upon the foundation. The above-quoted stipulation is inconsistent with the contention that the parties intended that the machinery should become a part of the realty until fully paid for. The appellant could not take possession of the property and sell it at public auction at the courthouse door having the property present at such sale unless it was intended by the parties that the property should retain its character as personalty."

See, also, Southwestern Public Service Co. v. Smith (Tex. Civ. App.) 31 S.W.(2d) 472; Murray Co. v. Simmons (Tex. Com. App.) 229 S. W. 461; 19 Tex. Jur. 734, § 28; and 26 C. J. 678, § 41, and authorities supporting these texts.

The court should have foreclosed the chattel mortgage lien upon all the personal property described therein, but not upon the buildings in which said property was situated.

The appellant further contends that, because the evidence showed that the deed of trust was executed before any money or materials were furnished and that afterward, on August 19th, an ordinary mechanic's lien contract was signed, duly acknowledged and delivered, and thereafter about $500 was advanced and used for the purpose of improving the land, the bank was entitled to a lien to the extent of the money advanced after the

execution of the mechanic's lien contract on August 19th.

The Constitution provides, with reference to fixing a mechanic's lien upon a homestead, that it may be subjected to such lien for work and materials used in constructing improvements thereon, provided the work and materials are contracted for in writing with the consent of the wife given in the same manner as is required in making a sale or conveyance of the homestead. Article 16, § 50, Const. R. S. art. 5460 further provides that, where repairs are to be made upon a homestead, it is necessary that the contract for labor and materials shall be executed before the materials are furnished or the labor is performed, and that such contract shall be recorded in the office of the county clerk. That such contract must be executed before any work is done has been frequently decided. Burton v. Schwartz (Tex. Civ. App.) 36 S.W. (2d) 1066; Walker v. House (Tex. Civ. App.) 24 S. W. 82. In the last-cited case it is held that, if the requirements of the Constitution and statutes are not fully complied with until after the work is partially finished, the mechanic's lien will attach as to material furnished and labor done after the execution of the contract, but we have no such case before us. The machinery was purchased from Maedgen on August 4th, and in payment therefor Nickels executed the notes sued upon in the sum of $3,000. On August 5th the bank gave Nickels credit for $400, subject to his check, on the O. K. of Maedgen. The fact that this money was not checked out until after August 19th is of no importance. When Nickels was credited with the $400, the fund belonged to him. No reason appears in the record why Maedgen could have refused to O. K. any check drawn by Nickels, and the facts show that, in drawing said checks against his account, Nickels was furnishing the money out of the funds previously borrowed and credited to his account in the bank. The fund was not deposited with any reference whatever to the mechanic's lien to be thereafter executed on the 19th of August. This assignment is without merit.

■ The fourth assignment is as follows: "A family owning and occupying one tract of land can not claim homestead at another tract, disclaiming homestead interest in the tract resided on."

This proposition is a mere abstraction and does not complain of any error committed by the court or any one else in connection with this case. As an abstract proposition of law it is incorrect and has no application to the facts of this case.

The appellant contends that, because it requested a peremptory instruction foreclosing a lien on the property, the court erred in overruling it, because the evidence without contradiction is that, for some time prior to and for months after the furnishing of the money and materials to complete the gin plant, Nickels, with his family, resided in Dougherty, six or seven miles distant, where he was engaged in the business of hauling wheat.

■■ The statement is incomplete, and the court would not have been justified, under the evidence, in directing a verdict. The uncontradicted testimony is that Nickels acquired the five acres of land in 1924, constructed a residence thereon soon afterwards, and began the erection of a gin, together with the outbuildings described in the deed of trust. That he was a ginner and continued to reside on the property and operate the gin until part of the plant was destroyed by fire in January, 1931. That he had no other business at that time, and intended, as soon as he could rebuild the burned portions of his gin, to resume business during the ginning season of 1931–1932. That some time in the month of May, 1931, after the fire, he traded an old truck which he owned for a two-room shack at Dougherty, a village of about one hundred people some six or seven miles from his residence on the gin site. That the value of the shack was about $150, and during the summer of 1931, in order to make a living for his family while he was repairing his gin plant for fall business, he left a portion of his furniture in his residence on the gin lot, and with his wife and child went over and occupied the shack at Dougherty, living there temporarily for the purpose of hauling wheat during the wheat season of June and July. He testified that he never intended to use the shack as a residence, but was occupying it merely as a matter of convenience during the hauling season. That he never had any intention of abandoning his homestead, but his plans at all times were to continue in the ginning business and live with his family on the gin site. That during the wheat season Maedgen, who owned the secondhand gin machinery, for himself and as president of the bank, entered into the negotiations with him for the purpose of selling his said machinery. That a trade was consummated whereby he agreed to pay Maedgen $3,000 for the gin machinery, executing the four notes sued on, together with the deed of trust. That before the consummation of the trade Maedgen made a special visit to the situs of the gin machinery in Floyd county and personally investigated and inspected the property, including the four-room residence thereon. It appears, according to Maedgen's testimony, that two or three days before the consummation of the deal and the execution of the notes and liens Maedgen visited the property where he saw the residence, scales and scalehouse, and the remains of the burned ginhouse. He knew that the property belonged to Nickels, who talked to him about it, and told him that he (Nickels) was a ginner and had been running a gin at

that place. That Nickels told him that his principal place of business was there at "Joe Bailey," the gin site. That he (Maedgen) knew Nickels wanted to keep on in the ginning business, and that was the reason why he was trying to get the gin machinery from Maedgen, and he also knew that Nickels was going to continue the business of ginning on that lot before the deed of trust was executed. He also knew that Nickels had lived in the residence prior to that time. That prior to the execution of the notes and liens Nickels had told him that the gin site was his place of business from 1925 until the gin burned in January, 1931, and that, if he could reconstruct the gin, he would continue the ginning business at that place where he and his wife had been living.

With these facts before them, the jury found that the five-acre lot was the residence and business homestead of Nickels on July 30, 1931, and that on said date Maegden knew these facts. Since the evidence is sufficient to support the jury's findings, we are not authorized to set them aside. Maedgen's testimony is sufficient to show that he had notice of the fact that the property was the homestead of Nickels at the time the deed of trust was executed. Under such circumstances the disclaimer inserted in the deed of trust simply raises an issue of fact for the jury.

As said in 17 Tex. Jur. 143, § 14: "No estoppel arises where the evidence shows that at the time of the transaction in question the plaintiff was as well informed as was the defendant in respect of the facts or that he had the same means of informing himself." See, also, Cosgrove v. Nelson (Tex. Civ. App.) 269 S. W. 891; Id. (Tex. Com. App.) 277 S. W. 1118.

It is said in 22 Tex. Jur. 178 that the issues as to notice and estoppel are ordinarily to be determined by the jury. See, also, Sparks v. Texas Loan Agency (Tex. Sup.) 19 S. W. 256; Davidson v. Jefferson (Tex. Civ. App.) 68 S. W. 822; Knowles v. Waddell Investment Co. (Tex. Civ. App.) 280 S. W. 885.

It is said in Blanks v. First National Bank of Seymour (Tex. Civ. App.) 44 S.W.(2d) 393, in discussing the question of the disclaimer of homestead in a deed of trust, that whether an estoppel arises by reason thereof is a question of fact which must be passed upon

by the jury. To the same effect is Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164. That the homestead claimant is not estopped as a matter of law is further held in First National Bank of Paris v. Wallace (Tex. Civ. App.) 13 S.W.(2d) 176.

■■■ By the fifth assignment the appellant objects to alleged improper argument made by counsel for appellees to the jury and the failure of the court to instruct the jury not to consider such argument.

In the statement following this assignment the appellant has improperly grouped three separate bills of exception. In one of them complaint is made of the fact that in his argument defendants' counsel called several of the jurors, with whom he was acquainted, by name. There was nothing improper in this. He further complains that counsel told the jury that he was telling the "God's truth." He certainly was not expected to tell the jury anything else. Appellant's counsel, as shown by the court's qualification to one of the bills of exception, had said that the defense of Nickels and wife was a fraud, that they had no homestead on the property, and that the question of a baby's chair coming into the case had nothing to do with it. That Nickels and wife did not have any use for a baby chair any more, as their only child was eight or ten years old, and that it did not look to him like Mrs. Nickels was going to have any more babies. In response to this appellees' counsel said: "God pity the country if the Lubbock National Bank or C. E. Maedgen [its president] could dictate how many babies somebody could have." We think the whole proceedings was improper and foreign to the issues in the case, but, since the remarks made by appellant's counsel first were entirely out of the record, remarks made by appellees' counsel may be justified as having been retaliatory.

Since each of the three bills related to separate matters, they should not have been grouped, but we have waived that, not, however, for the purpose of setting a precedent.

Because the court erred in failing to foreclose the chattel mortgage lien upon the personal property, the judgment is reformed, and it is here ordered that said lien be foreclosed, and, as reformed, it is affirmed.